IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | 8:20CR165 |
| vs. | |
| DIRK JOHNSON, and LINDA RIASKI, | FINDINGS AND RECOMMENDATION |
| Defendants. | |

This matter is before the Court Defendants' Motion to Suppress, Application for *Franks* Hearing, Request for Evidentiary Hearing and Request for Oral Argument.[1] ([Filing No. 50](#).) An evidentiary hearing was held regarding this matter on January 10, 2022. A transcript has been filed and the motion is ripe for disposition.

For the reasons explained below, the undersigned will recommend that the motion be denied.

### FACTS

Investigator Jerry Brisky ("Investigator Brisky") testified at the evidentiary hearing on this matter. Investigator Brisky is a deputy sheriff with the Sarpy County Sheriff's Office and has been employed there for twenty years. (TR. 8.) Investigator Brisky has been assigned to the narcotics unit for around four years. (TR. 8.) In that capacity, Investigator Brisky works with confidential informants ("CI") and other sources to investigate narcotics offenses. (TR. 9.)

---

[1] The Motion to Suppress was originally filed on behalf of Defendant Linda Riaski. However, Defendant Dirk Johnson later moved to join in the motion ([Filing No. 87](#)). This request was granted by the Court. (Filing No. 89).

In December, 2019, Investigator Brisky began an investigation into Defendants after receiving information about Defendants from a CI. (TR. 9.) Based on the information he obtained from the CI, Investigator Brisky presented a search warrant affidavit to Sarpy County Court Judge Robert Wester on December 19, 2019. (Ex. 101.) A warrant for the search of Defendant Riaski's residence, which is in La Vista, Nebraska, was issued by Judge Wester on December 19, 2019. (Ex. 102.)

Investigator Brisky's affidavit included a recitation of information he received from the CI. (Ex. 101.) Investigator Brisky's affidavit stated that within forty-eight hours of December 10, 2019, the CI advised Investigator Brisky that she had been inside the La Vista residence and observed Defendant Riaski, who the CI believed to live at the residence, with methamphetamine. (Ex. 101.) The affidavit stated that the CI told Investigator Brisky that Defendant Riaski was a methamphetamine user and dealer and that the CI witnessed Defendant Riaski packaging methamphetamine for sale in the residence within the last month. (Ex. 101.) The affidavit further provided that the CI advised Investigator Brisky that the methamphetamine she observed was in a plastic bag on the table in the kitchen and the bag contained approximately three to four ounces of methamphetamine. (Ex. 101.) The CI reported that a scale for weighing methamphetamine was also in the kitchen. (Ex. 101.)

The affidavit further stated that within twenty-four hours of December 19, 2019, the CI advised that she had been in the residence and observed approximately a pound of methamphetamine in the proximity of an individual known to the CI as Defendant Johnson. (Ex. 101.) The CI reported that Defendant Johnson was a methamphetamine dealer and that she had witnessed him packaging methamphetamine for sales inside the residence within the last month. (Ex. 101.) The affidavit stated that the CI advised Investigator Brisky that Defendant Johnson and an individual named Denman Johnson lived with Defendant Riaski. (Ex. 101.) The CI reported she had seen Defendant Riaski in possession of a black 9mm handgun in the residence and that Defendant Johnson kept a black/silver 9mm handgun on his person. (Ex. 101.)

The affidavit stated that Investigator Brisky checked with OPPD and MUD and confirmed Defendant Riaski was the utility subscriber for the residence. (Ex. 101.) The affidavit further stated that Investigator Brisky showed the CI a DMV photo of Defendant Riaski, Defendant Johnson, and Deman Johnson and that the CI positively identified them. (Ex. 101.) The affidavit

set out Defendant Riaski and Defendant Johnson's criminal history and indicated Defendant Riaski had previous convictions for possession of a controlled substance. (Ex. 101.) It further indicated Denman Johnson did not have a significant criminal history confirmed. (Ex. 101.)

Investigator Brisky stated in the affidavit that the CI had given him information in the past that had been proven both reliable and accurate. (Ex. 101.) The affidavit stated that the CI had on multiple occasions made methamphetamine purchases under Investigator Brisky's supervision and that the substances purchased had testified positive for methamphetamine. (Ex. 101.) Investigator Brisky further stated in the affidavit that the CI was familiar with the appearance, packaging, and pricing of methamphetamine for street sale. (Ex. 101.)

Investigator Brisky testified at the evidentiary hearing that he had been working with the CI referenced in the affidavit since the beginning of 2018. (TR. 10.) He began to work with the CI after there was an anonymous complaint of narcotics involvement at an apartment unit. (TR. 10.) When officers went to the apartment unit, they were able to reach an agreement with the CI, who was the occupant of the apartment, to become a CI. (TR. 11.) As part of that agreement, the CI was to be paid for information. (TR. 11.) Investigator Brisky testified that he also helped the CI get criminal charges pending against her in Sarpy County dismissed in February, 2018. (TR. 11; TR. 15-16; TR. 19.) Investigator Brisky testified that the CI did not approach him about getting the charges dismissed or for favorable treatment. (TR. 19.) Investigator Brisky said he was aware of the charges in Sarpy County and approached the Sarpy County Attorney's office about the matter because he wanted to use the CI for an investigation but could not do so if the CI was convicted and sentenced to jail. (TR. 19-20; TR. 35.) Investigator Brisky testified that he spoke to the Lancaster County Attorney's Office on the CI's behalf related to charges for possession of controlled substances on one occasion, but he did not know if his input was taken into consideration. (TR. 11-12; TR. 16; TR. 34.)

Investigator Brisky testified that prior to using this individual as a CI, he checked her criminal history. (TR. 14.) In 2002, the CI was convicted of possession of a controlled substance and escape, which resulted in incarceration. (Ex. 104.) The CI entered a plea of no contest to a charge of forgery in February, 2010. (Ex. 107.) The CI had also been arrested for 2nd degree forgery and five counts of identity theft, and was convicted on two counts of identity theft in November, 2018. (Ex. 105.)

3

Investigator Brisky testified that there was no information obtained from the CI that was contained in the affidavit for the search warrant that caused him concerns about the veracity of the information. (TR. 13.) Investigator Brisky testified he did not have any doubts about the CI's credibility in this case or have any reason to believe the information provided by the CI was untruthful. (TR. 20; TR. 39.) Investigator Brisky stated he believed the CI was truthful based on reliable information the CI had provided in the past for search warrants. (TR. 12.) Investigator Brisky stated these previous search warrants all resulted in charges, except for one. (TR. 12.) Investigator Brisky testified that in the one case that charges were not filed, the CI provided information that she observed a person inside a residence in the presence of methamphetamine. (TR. 17.) Based on this information, Investigator Brisky obtained a warrant. (TR. 17.) When the warrant was served several days later, the individual was not at the residence and no methamphetamine was found. (TR. 17-18.) Investigator Brisky testified that not all search warrants result in arrests and the lack of an arrest in that case did not cause him to question information provided by the CI. (TR. 12-13.)

Investigator Brisky testified that he did not include information about the one instance that resulted in no charges in his affidavit for a search warrant in this case, nor did he include information about the CI's prior crimes or charges. (TR. 18.) Investigator Brisky testified that he was not taught to list convictions for CIs in his warrant affidavits and was not trained to indicate an absence of criminal history for CIs in his warrant affidavits. (TR. 27, TR. 29.) Investigator Brisky testified that he has drafted less than twenty search warrant affidavits over his career, most of which contained information from a CI, and has never listed adverse information known to him about a CI when drafting such affidavits. (TR. 29.) Investigator Brisky testified that if there had been an instance where previous charges against a CI had anything to do with the person the CI was then providing information about, he would feel a duty to include this information in an affidavit. (TR. 30.)

Investigator Brisky testified that he did not believe the CI in this case was on parole at the time he drafted the affidavit, but that if confidential informants are on probation or parole, he includes that information in warrant affidavits. (TR. 36.) Investigator Brisky testified the inclusion of this information has nothing to do with the credibility of the confidential informant, but that it is just an administrative matter because he would have to contact the probation or parole office

4

and inform the judge that the parole or probation officer was aware of the matter. (TR. 36.) Investigator Brisky also testified that he does not believe any criminal charges were pending against the CI at the time he wrote the affidavit in this case, except for perhaps traffic offenses, which would include speeding tickets or things of that nature. (TR. 35; TR. 39.) Investigator Brisky testified it is not his practice to list pending charges against a CI when drafting an affidavit. (TR. 36.)

Investigator Brisky testified that the CI was paid approximately three or four hundred dollars for the information provided in this case. (TR. 19.) The CI was paid after the search warrant was executed. (TR. 37.) Investigator Brisky testified he normally pays a little more for successful search warrants. (TR. 37.) Investigator Brisky stated when drafting warrant affidavits, he does not inform the court about the nature of his payment relationship with informants. (TR. 37-38.)

Defendant Riaski offered her affidavit at the evidentiary hearing in this case. (Ex. 103.) In the affidavit, Defendant Riaski states that on July 31, 2019, the individual who she believes to be the CI was arrested in Lancaster County Nebraska and, at the time of her arrest, the CI possessed Defendant Riaski's keys and wallet. (Ex. 103.) The affidavit provides that the CI called Defendant Riaski from jail wanting to get booked out and when the CI was released from jail a week later, the CI gave Defendant Riaski her wallet and keys, but the wallet was missing Defendant Riaski's checkbook and credit cards. (Ex. 103.) Defendant Riaski's affidavit states that checks on Defendant Riaski's checking account were subsequently fraudulently cashed. (Ex. 103.) The affidavit further provides that recurring charges were attempted to be set up using Defendant Riaski's account and that the charges were in the name of a person associated with the CI. (Ex. 103.) Defendant Riaski states in her affidavit that she was in Las Vegas, Nevada between December 10, 2019 and December 15, 2019 and that the CI was never in her home. (Ex. 103.) The affidavit further provides that the CI attempted to come into Defendant Riaski's residence on December 19, but that Defendant Riaski would not let her in. (Ex. 103.) In her affidavit, Defendant Riaski states that she knows the CI was not in her residence based on video surveillance at her home that she has reviewed. (Ex. 103.) The affidavit further provides that Denman Johnson is the CI's ex-boyfriend and that the CI has tried to get Denman Johnson arrested on multiple occasions using false accusations. (Ex. 103.)

Investigator Brisky testified he did not know if the CI previously contacted Defendant Riaski to try to get money to bail her out of jail. (TR. 21.) Investigator Brisky testified the CI told him after the search warrant was executed that Defendant Riaski claimed the CI owed her forty dollars. (TR. 21; TR. 32; TR. 34.) Investigator Brisky also testified he did not know if the CI had cashed any checks on Defendant Riaski's checking account or incurred recurring charges on her credit cards. (TR. 24.) Investigator Brisky testified he was aware that an individual named Denman Johnson had a prior relationship with the CI, but he did not know the nature of the relationship or if there was any animosity or problems between them. (TR. 21-22.) Investigator Brisky testified he knew Denman Johnson was associated with Defendant Johnson. (TR. 22.) Investigator Brisky testified he did not believe Denman Johnson resided at the address that was the subject of the search warrant, but that it was possible that Denman Johnson would be at the residence when the warrant was served. (TR. 22.) Investigator Brisky testified that he knew Defendants had taken a trip to Las Vegas shorty before he was going to apply for a search warrant for the residence. (TR. 22-23; 33.) Investigator Brisky testified that he did not learn that they had gone to Las Vegas from the CI. (TR. 22.) Investigator Brisky stated that he learned this information by searching the internet while he was preparing the affidavit for the search warrant. (TR. 22-23; 33.) Investigator Brisky did not present the first affidavit he prepared to a judge when he learned Defendants were in Las Vegas. (TR. 33.) When Defendants returned from Las Vegas, the CI got additional information regarding Defendants and Investigator Brisky prepared a new affidavit to present to a judge for the search warrant. (TR. 33.)

## DISCUSSION

### 1.     Franks Challenge

Defendants argue they are entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) to determine if the affidavit offered in support of the search warrant set out sufficient facts to support a finding of probable cause. Defendants contend the affidavit improperly omitted that the CI had a felony criminal record, had been incarcerated, and had been arrested for forgery and identify theft. Defendants also maintain the affidavit improperly failed to advise the issuing judge that the CI was paid for information, that criminal charges had been dismissed against the CI in the past in exchange for information, and that the CI had provided incorrect information in the past.

6

Defendants also argue the affidavit contains false and misleading statements. Defendants contend Defendant Riaski's home surveillance system shows that the CI was not at Defendant Riaski's residence at the time the CI claimed to have been there. Defendants assert they were in Las Vegas between December 10th and December 15th and that Defendant Riaski did not allow the CI in her home on December 19th. Defendants further maintain the CI was motivated to provide false information because the CI stole Defendant Riaski's wallet, credit cards, checks and truck keys and was upset with Defendant Riaski for refusing to bail her out of jail.

To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that the affiant included in the warrant affidavit a false statement knowingly and intentionally, or with reckless disregard for the truth, and the affidavit's remaining content is insufficient to establish probable cause. [Franks v. Delaware, 438 U.S. 154, 171 (1978)](). "[T]he test for determining whether an affiant's statements were made with reckless disregard for the truth is not simply whether the affiant acknowledged that what he [or she] reported was true, but whether, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported." [United States v. Schmitz, 181 F.3d 981, 986-87 (8th Cir. 1999)]() (quotation omitted).

Omissions from an affidavit can also vitiate a warrant if the defendant proves "first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." [United States v. Allen, 297 F.3d 790, 795 (8th Cir. 2002)](). "The failure to include information and a reckless disregard for its consequences may be inferred from the fact that the information was omitted, although the defendant must show that the omitted material would be 'clearly critical' to the finding of [probable] cause." [United States v. Gladney, 48 F.3d 309, 313-14 (8th Cir. 1995)]() (internal quotation omitted).

Here, there is no indication that any false statement was intentionally, or with reckless disregard for the truth, included in the affidavit. Even assuming the information provided by the CI was false or misleading, there is no evidence that Investigator Brisky knew or should have known about any inaccuracy. Investigator Brisky testified he did not know if the CI previously contacted Defendant Riaski to try to get money from her so she could post bail to get out of jail. Investigator Brisky also testified he did not know if the CI had cashed any checks on Defendant

7

Riaski's checking account or incurred recurring charges on her credit cards. Investigator Brisky stated he was aware that an individual named Denman Johnson had a prior relationship with the CI, but he did not know the nature of the relationship or if there was any animosity or problems between them. Investigator Brisky testified that he knew Defendants had taken a trip to Las Vegas shorty before he applied for a search warrant, but that this information was not provided by the CI. Investigator Brisky testified he did not have any doubts about the CI's credibility or have any reason to believe the information provided by the CI was untruthful. The CI had provided reliable and accurate information in the past to Investigator Brisky. Looking at all the information available to Investigator Brisky at the time, there is no indication that Investigator Brisky had any reason to question the accuracy of the information provided by the CI.

Likewise, there is no evidence which suggests that facts were omitted with the intent to make, or in reckless disregard of whether they made, the affidavit misleading. Defendants complain that the affidavit improperly omitted information pertaining to the CI's criminal history, charges, dismissal of charges, inaccuracy of previous information in other investigations, and payment relationship between the CI and Investigator Brisky. Investigator Brisky testified that he did not believe criminal charges were pending against the CI at the time he prepared the affidavit, except for perhaps traffic offenses. However, Investigator Brisky testified it is not his practice to list pending charges against CIs in his warrant affidavits and that he was not taught to list convictions for CIs in his affidavits. He also testified he was not trained to indicate an absence of criminal history for CIs in his warrant affidavits.

Investigator Brisky explained that he helped the CI get criminal charges pending against her in Sarpy County dismissed in February, 2018, but that the CI did not approach him about getting the charges dismissed or request favorable treatment. Rather, Investigator Brisky said he approached the Sarpy County Attorney's office about the matter because he wanted to use the CI for an investigation. Investigator Brisky acknowledged that he spoke to the Lancaster County Attorney's Office on the CI's behalf related to charges for possession of controlled substances on one occasion, but he did not know if his input was taken into consideration.

Investigator Brisky testified that he has drafted less than twenty search warrant affidavits over his career, most of which contained information from a CI, and has never listed adverse information known to him about the CI. Investigator Brisky acknowledged that the CI provided

8

information in one case that did not result in charges, but that this only happened one time and that the warrant in the case was not served immediately. Investigator Brisky testified that not all warrants result in arrests and that the lack of an arrest in that case did not cause him to question the information provided by the CI. In short, there is no indication that Investigator Brisky intentionally or recklessly omitted information from the affidavit to mislead the issuing judge.

Moreover, supplementation of the affidavit with the CI's criminal background, dismissal of charges, law enforcements non-recovery of evidence on one pervious occasion based on information provided by the CI, and information pertaining to the payment relationship between Investigator Brisky and the CI would not alter the probable cause finding. "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." *United States v. Williams,* 10 F.3d 590, 593 (8th Cir.1993). "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." *Id*. at 593. *See also United States v. Wright,* 145 F.3d 972, 974-75 (8th Cir.1998) ("The statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant . . . The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information") (internal citation omitted).

The Eighth Circuit has concluded that "an affidavit is not robbed of its probative effect by its failure to mention that the informant was a paid informant who avoided prosecution by virtue of her testimony." *United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007) (internal quotation omitted). The court has likewise found that the omission of information in an affidavit regarding a CI's criminal background will not alter a probable cause finding when a CI has a history as a reliable informant. *Id*.

Here, the issuing judge knew that the CI had provided truthful and useful information for law enforcement regarding drug activity on previous occasions. *See United States v. Gabrio,* 295 F.3d 880, 883 (8th Cir.2002) (finding that the informant's provision of reliable information on at least two occasions, coupled with his return of stolen property, established his reliability). The affidavit stated that the CI had provided Investigator Brisky information in the past that had been proven both reliable and accurate. The affidavit stated that the CI had on multiple occasions made

9

methamphetamine purchases under Investigator Brisky's supervision and that the substances purchased had testified positive for methamphetamine. Investigator Brisky further stated in the affidavit that the CI was familiar with the appearance, packaging, and pricing of methamphetamine for street sale. Even though the CI had a relationship with Investigator Brisky pursuant to which the CI was paid for information, there is no evidence that this payment relationship impacted her reliability. *See Williams*, 477 F.3d at 559 (finding that failure to disclose terms of an agreement with CI did not render warrant application misleading where there was no evidence that the agreement might have adversely impacted the CI's reliability).

The issuing judge was also aware that the information provided by the CI was at least partially corroborated. The affidavit stated that Investigator Brisky checked with OPPD and MUD and confirmed Defendant Riaski was the utility subscriber for the residence. The affidavit further stated that Investigator Brisky showed the CI a DMV photo of Defendant Riaski, Defendant Johnson, and Denman Johnson and that the CI positively identified them. The affidavit set out Defendant Riaski and Defendant Johnson's criminal history and indicated Defendant Riaski had previous convictions for possession of a controlled substance. The inclusion of the information identified by Defendants would not have changed the probable cause determination. Accordingly, the undersigned will recommend that Defendants' request for a *Franks* hearing be denied.

**2.    Probable Cause and Leon Good Faith Exception**

To be constitutionally valid, "a search warrant must be supported by a showing of probable cause." *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007). Probable cause exists if, based on the totality of the circumstances, a showing can be made "sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) (internal quotation omitted). "Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States. v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (quotation omitted).

However, "[u]nder the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing

officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). A "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (quotation omitted). An officer's reliance on a warrant may be said to be unreasonable in four circumstances: (1) when the affidavit supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for the truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when it is entirely unreasonable to believe that an affidavit provides probable cause to issue a warrant; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Proell*, 485 F.3d at 431 (quotation omitted). "[W]hen assessing the officer's good faith reliance on a search warrant under the *Leon* good faith exception, [courts] can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014).

For the reasons already stated, there is no evidence that Investigator Brisky included false statements in his affidavit, nor is there evidence that Investigator Brisky omitted material information that would have precluded a finding of probable cause. There has been no assertion that the issuing judge wholly abandoned his judicial role. Also, the affidavit was not so lacking in probable cause that reliance upon it would be entirely unreasonable. Finally, the warrant was not so deficient that no reasonable officer could rely on it. Therefore, even assuming there was no probable cause for issuance of the warrant, the evidence would nevertheless be admissible pursuant to the good faith exception.

Accordingly,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Robert Rossiter, Jr. that Defendants' Motion to Suppress, Application for *Franks* Hearing, Request for Evidentiary Hearing and Request for Oral Argument (Filing No. 50) be denied.

Dated this 2nd day of March, 2022.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.